# PECK *v.* HALEY.

EQUITY; ADEQUATE REMEDY AT LAW; LACHES; FRAUD, GENERAL ALLE-
                              GATIONS OF.

1. The remedy of claimants of land, if they have one, is at law and not
   in equity, and their bill is demurrable on that ground, where they
   allege that the debt secured by a deed of trust given by a former
   owner, a married woman, under whom they claim, and her hus-
   band, seventy years before the commencement of their suit, was
   paid, although no formal release of the trust can be proved;
   that two years after the deed of trust was given the husband
   of the owner of the land, although having but a tenancy by the
   curtesy, made a contract with a third person, to convey the
   land to him, and he thereupon entered into possession; and
   forty-one years thereafter a deed was fraudulently procured by
   one in possession claiming under such third person, from the
   surviving trustee under the deed of trust, conveying to him the
   legal title;— as any presumption, on the one hand, of payment
   of the debt and release of the trust from the circumstances and
   the lapse of time, or, on the other, of a conveyance under the
   contract to convey, can be indulged in as well at law as in equity.

2. The fact that the heirs of a record-owner of land had become widely scattered is not sufficient to excuse a delay of sixteen years in bringing a suit in equity to establish title to the land, in the absence of any fraudulent concealment from them of their rights and of any fiduciary relations between them and the defendants in possession, or any one under whom the latter claim; and where the land claimed has increased enormously in value during an adverse possession of seventy years, and every one having actual knowledge concerning ancient transactions regarding the title, is dead.

3. Mere general allegations in a bill in equity that a conveyance of the legal title of land was fraudulently procured from a surviving trustee under a deed of trust by one under whom the defendants claim, is insufficient; but the facts which constitute the fraud, must be specifically stated; *distinguishing* McGee v. Welsh, 18 App. D. C. 177.

No. 1185.  Submitted January 21, 1903.  Decided February 3, 1903.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia sustaining a demurrer to and dismissing a bill in equity to establish title to certain lands held adversely by the defendants.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit in equity by the heirs of Ann Bartlett, who died intestate in 1876, to establish title to certain lands held adversely by the defendants.

The bill contains the following allegations substantially:

1. That on November 8, 1828, one William A. Bradley, as trustee for Thomas Mitchell, conveyed a tract of 46 acres of land, in the District of Columbia, to said Ann Bartlett.

2. That said land was purchased at public sale by said Ann Bartlett for the sum of $2,450, which sum, the aforesaid deed recites, had been secured " to the approbation of the said Bradley."

3. That on November 8, 1828, Ann Bartlett and her husband, John L. Bartlett, conveyed said tract of land to Weight-

VOL. XXI — 15

man and Riely, trustees, for the purpose of securing the payment of a note described as follows in said deed, which is made an exhibit to the bill:

" Whereas a note for the sum of twelve hundred dollars and dated the 4th day of November, 1828, drawn by George W. P. Custis and indorsed by the said John L. Bartlett at six months after date, is about to be discounted in the Bank of Washington, the proceeds of which it is intended shall be applied to the payment of the residue of the purchase money for a piece of land purchased by the said Ann Bartlett from William A. Bradley, trustee of Thomas Mitchell." The deed contains the usual power of sale in case of default in the payment of the note.

4. That complainants believe and aver that said note was discounted and the proceeds applied as stated, and that thereby the entire purchase money of the lot was paid; that the note before recited was paid by said Custis, and thereafter it became the duty of the trustees, Weightman and Riely, to reconvey the said land to said Ann Bartlett, notwithstanding there was no provision in the said conveyance requiring them so to do; that said conveyance has never been made by them, but on the contrary, the surviving trustee, Weightman, on November 3, 1869, conveyed the said land by way of release to the father of the defendants.

5. That prior to July 1, 1830, issue had been born to said John L. and Ann Bartlett whereby the said John became seized of an estate by the curtesy in the said land.

6. That on July 1, 1830, an agreement was executed by John L. Bartlett and Robert Isherwood for the conveyance of said land, wherein it is stipulated that in consideration of the sum of $1,550 to be paid by Isherwood the said Bartlett should, on or before the 1st of November thereafter, convey the said tract of land by a good and sufficient deed, to said Isherwood. Three hundred and fifty dollars were paid to Bartlett at that time, and $1,200 were to be paid upon the execution and delivery of the deed; it was further stipulated that Isherwood, his heirs and assigns might enter upon the land on November 1, thereafter, and should have the

rents, issues, and profits of the same from said 1st day of July, 1830.

7. That Isherwood took possession of the land under said contract and died in possession thereof on June 1, 1849, testate, leaving three children, one of whom married Alfred G. Haley, who continued in possession of the same.

8. That by inheritance, devises in trust, and conveyances in partition, etc., the recital of which is not necessary, the parcels of said original tract of land, which are the subject of controversy in this suit, passed to and vested in said Alfred G. Haley under title in fee·simple.

9. That Alfred G. Haley was a lawyer on June 5, 1866, when conveyance was first made to him by John H. McCutcheon, trustee for the three heirs of said Robert Isherwood, and was well aware of the condition of the title to said lands, and that the debt secured by the conveyance to Weightman and Riely, trustees, had long been discharged, without reconveyance by them to the said Ann Bartlett, who had become entitled thereto; that said John L. and Ann Bartlett were then nonresidents, having removed to Connecticut prior to 1840, and none of their descendants ever became residents of the District.

10. Complainants aver that the said Haley, knowing the said John L. Bartlett could not recover the possession of the said parcel of land in his said contract with the said Isherwood described by reason of his having put the said Isherwood in the possession thereof as aforesaid, under the said contract, and by reason of the covenant of him, the said Bartlett, in the said contract contained, to procure the investment of the said Isherwood with a fee-simple title to the said land, and also believing that by reason of the long possession by the said Isherwood and those claiming under him of the said land, under said contract, and the long absence of the said Ann Bartlett from the said District, that neither she nor her descendants would ever appear to claim the same, and further believing that it would be to the advantage of the said devisees and heirs of the said Robert Isherwood in enabling them more readily to sell said land,

and that it would strengthen the position of the said devisees and heirs of the said Isherwood and of said Haley in case of any attempt on the part of the said Ann Bartlett or her descendants to recover the same, did craftily and in derogation of the rights of her, the said Ann Bartlett, in the premises, induce and persuade the said Roger C. Weightman, who was the survivor of the said Riley, and who was then quite old, and who by reason of his advanced age was of feeble mind and body, to execute and deliver to the said Haley a deed bearing date November 3, 1869, and on the same day recorded in Liber T. and R. 18, at folio 400, of said land records, wherein and whereby the legal title in fee to said·land invested in him, the said Weightman, as surviving trustee under the said hereinbefore-mentioned deed of conveyance in trust, dated November 28, 1828, from the said John L. and Ann Bartlett to the said Weightman and the said Riely, was transferred to and vested in the said Haley, and is now by descent vested in his two children and sole heirs-at-law.

11. That Alfred G. Haley died in 1882, and John L. Bartlett died at Hammerton, New Jersey, May 24, 1884.

12. " That the said John L. Bartlett and Ann Bartlett, his wife, after removing from the said District as aforesaid, remained in said State of Connecticut until the year 1860, when they moved to Owego, in the State of New York, and that between the time of their removal from the said District and the said death of the said Ann Bartlett, in 1876, the said John L. Bartlett was absent from his home for long periods of time, and visited the same infrequently; that he had no permanent employment and traveled from place to place, and that after the death of his said wife he went away and thereafter, during his lifetime, his whereabouts were unknown to the children or descendants of the said Ann Bartlett; that in the meantime, by reason of marriages, half-blood relationship, death of parents, infancy and other causes, the descendants of the said Ann Bartlett had become widely separated and were living at various places in the said United States, remote from each other, and the whereabouts of but

few of them known to the others; that two children only of
the said John L. and Ann Bartlett, viz., the said Annie L.
Peck and James L. Bartlett, survived their father, and that
the said James L. Bartlett survived him for about one year;
that the said Annie L. Peck learned of the death of her
father about one week after it took place, but the remain-
ing descendants of the said Ann Bartlett did not learn of
the same for several years thereafter, and as to those of them
residing in Texas not until the year 1891, and that since
learning of their rights in the premises the complainants
have been diligent in their efforts through counsel learned
in the law and agents and trustees to enforce the same.

" That prior to the said year 1891 Ezra J. Peck, the hus-
band of the said Annie L. Peck, at her instance, was en-
deavoring, through correspondence and inquiry by mail, to
ascertain the whereabouts of the other descendants of the
said Ann L. Bartlett, and to obtain united action, on their
part, in an effort to recover the real estate aforesaid, and
that it was not until the said year 1891 communication was
finally had between all the parties in interest, and such ac-
tion became possible, and that thereupon counsel was em-
ployed for said purpose.

" That under the advice of such counsel certain deeds of
conveyance were executed and delivered by complainants to
said Ezra J. Peck and Leo Simmons and their heirs, whereby
the title of the descendants of the said Ann Bartlett to said
real estate was conveyed to the said Peck and Simmons, in
trust, among other things, to institute and prosecute such
suits and actions as might be necessary to recover said real
estate, and to sell and dispose of the same for the benefit of
said descendants; that one of said deeds is dated October 20,
1891, and the other June 20, 1892, and that said deeds were
recorded on October, 1892, in Liber ——, at folio —— *et seq.,*
of the land records of said District; that in the said month of
October, 1892, the said Peck and Simmons, as such trus-
tees, instituted a suit in ejectment in the Supreme Court of
said District to recover the said subdivision lots Nos. 10, 11,
12, 13, 23, and 24, in said block or square 10, and instituted

another suit in ejectment against Christian Heurich, who held under said Haley, to recover other portions of said real estate; that upon the trial of the case last mentioned the court held the said last-mentioned deeds to be invalid and void and to pass no title, and there was verdict and judgment for said defendant; that this ruling upon appeal was affirmed by the Court of Appeals of said District and by the Supreme Court of the United States for reasons which will appear in the opinions of the said courts respectively, which are reported in 6 App. D. C. 273, and 167 U. S. 624."

13. "That until they were informed by their counsel of the fact in 1894 none of the descendants of the said Ann Bartlett had knowledge of the said deed from said Weightman, surviving trustee, to the said Haley, and they believe, and so believing aver, that the said Ann Bartlett was ignorant of the same in her lifetime; that said counsel gave it as their opinion, based upon the decisions of the Supreme Court of the United States in *Doe* v. *Considine,* 6 Wall. 458, and *Young* v. *Bradley,* 11 Otto, 782, that by the payment of the debt secured the title of the said Weightman and Riely under the said deed of trust became extinct, and that the legal title in said land revested in the said Ann Bartlett, and that the said deed from the said Weightman, as surviving trustee, to said Haley would be no bar to the maintenance of ejectment by the descendants of the said Ann Bartlett; that complainants, however, are now advised by said counsel that upon further consideration of the premises and upon consultation with other counsel who have also been recently employed by and on behalf of complainants that they are of the opinion that the said deed of trust to Weightman and Riely falls within the class of instruments adverted to in the opinion of the said Supreme Court of the said United States in the case of *Lincoln* v. *French,* 15 Otto, 614, and not within the class to which those belonged, which were considered by said court in the first-mentioned cases, and that under the decision in *Lincoln* v. *French* the legal title to said land continued in said trustees and in the survivor of them until it passed by the deed from the survivor of them,

said Weightman to said Haley; that it was in said Haley at the time of his death and upon his death passed to the said defendants, Hardy I. Haley and Zoe Haley."

"And forasmuch as complainants cannot bring their action of ejectment against the said defendants for the recovery of the said above specifically enumerated lots because the naked legal title thereto is outstanding in the said defendants, under the circumstances above stated, and forasmuch as complainants have no remedy in the premises, save in this honorable court, they pray:"

(1) That a decree be passed declaring that the lands described be held in trust for complainants; (2) that complainants be permitted to prosecute their action of ejectment, and defendants be restrained from setting up in defense the deed from Weightman to Haley, or that issues to try the title may be framed and sent to the court of law under the same restrictions; (3) that the amended bill be retained until such action of ejectment or issues may be tried, etc.; (4) that they may have general relief.

The amended bill, from which the foregoing statement has been taken, was filed January 13, 1900. The record does not show the filing date of the original bill, for which it is a substitute.

Defendants demurred to the bill on the following grounds:

1. Because of laches apparent on the face of the bill.

2. Because it appears that the right is barred by the statute of limitations.

3. Because the remedy, if any, is at law.

4. Because it appears that any title complainants may have had appears to have been conveyed to persons who are not parties to the suit.

5. Because the prayers for relief are inconsistent with each other.

The demurrer was sustained and the bill dismissed. From that decree the complainants have appealed.

*Mr. H. T. Taggart, Mr. A. A. Birney,* and *Mr. Leo Simmons* for the appellants:

1. For the purposes of this appeal the facts averred in the amended bill are to be accepted as true. *McGee* v. *Welch,* 18 App. D. C. 177; *Pac. RR. Co.* v. *Pac. RR. Co.,* 111 U. S. 520.

2. The statute of limitations is no bar. At the time of the execution of the contract between John L. Bartlett and Robert Isherwood in 1830, the said Bartlett was seized of an estate by the curtesy in the land. The contract and the delivery of possession of the land operated to transfer said Bartlett's life estate to Isherwood, leaving only an estate in remainder to the said Ann Bartlett and her heirs; complainants had no right of entry until the death of the life tenant. *Gregg* v. *Tesson,* 1 Black, 150; *Central Land Co.* v. *Laidly,* 3 L. R. A. 830; *Sherball* v. *Hurdley,* 31 Ill. 228; *Townsend* v. *Townsend,* 25 So. Rep. 716; *Jacob* v. *Rice,* 33 Ill. 372. Ann Bartlett died in 1876 in the lifetime of her husband; the latter died in 1884; there can be no bar in any event under the statute until 1904, and this suit was instituted in 1898.

3. Complainants have no remedy at law. The bill avers that no release or reconveyance to Ann Bartlett or her heirs was ever executed by Weightman and Riely or the survivor of them, and it avers that the legal title passed to Haley by the deed from Weightman to said Haley, and by the death of said Haley intestate passed to his heirs-at-law, who are the two defendants. This is admitted by the demurrer and there can be no presumption otherwise.

The case is not one of an outstanding unreleased mortgage, by the terms of which the mortgagor is to remain in possession until default; but if the case were one for the indulgence of a presumption of a reconveyance to Ann Bartlett or her heirs the presumption would be a rebuttable one, and in case of ejectment by the complainants against the defendants the deed from Weightman to Haley could be set up in defense, the presumption rebutted and this would defeat the action. *Lincoln* v. *French,* 105 U. S. 614; *Wilkes* v. *Wilkes,* 18 App. D. C. 97; *Hollingsworth* v. *Sherman,* 81 Va. 672. The common-law rule is that plaintiff cannot

maintain ejectment " upon an equitable title, however clear and indisputable it may be, but must seek his relief in chancery." Tyler on Eject. 75; *Carter* v. *Ruddy,* 166 U. S. 496, citing *Johnson* v. *Christian,* 128 U. S. 382, among other cases. Under the Code of the District of Columbia (Sec. 989) the defendants, being in possession under the surviving trustee, might, apparently, set up as a defense in such suit that the legal title was not in the plaintiff, and was, in fact, in themselves by descent, under the deed to their father. The debt having been paid by Custis, whose obligation it was, it is evident that a resulting trust arose for the benefit of Ann Bartlett, and that it was the duty of the trustee thereupon to reconvey to her if alive, and if dead to her heirs, and not to a stranger; he held for her and their benefit only. Under the release to Haley he took *cum onere,* for it is averred that he craftily and in derogation of her rights procured its execution, with intent to use it as an obstruction to the assertion of her rights and the rights of complainants under her. He knew that its execution would be a breach of trust on the part of the trustee and a fraud upon both the trustee and the complainants. Haley then became a trustee, *ex maleficio,* and was in conscience bound to reconvey; that duty has devolved and now rests upon his heirs-at-law, the defendants, and they should not be permitted to profit by their refusal to recognize and perform it. *Widdicombe* v. *Childers,* 124 U. S. 403; *Wormley* v. *Wormley,* 8 Wheat. (U. S.) 421; *Meador* v. *Norton,* 11 Wall. (U. S.) 458; *Smith* v. *Ayers,* 101 U. S. 320; *Jones* v. *Van Doren,* 130 U. S. 691; *Moore* v. *Crawford,* 130 U. S. 128; *Meeks et al.* v. *Milwaukee, etc., RR. Co.,* 78 Wis. 525.

4. Complainants not chargeable with laches. It has been shown that complainants are not barred by the statute of limitations, and that they might now bring ejectment were it not for the fact that the legal title is in the defendants. The defendants refuse to convey to the complainants and to deliver the possession wrongfully withheld. Their position in the present status of the case is unconscionable; it amounts in effect to this — that although they have only a naked

legal title with equitable ownership in complainants, to whom they should convey, nevertheless they should not be enjoined from setting up such title against the true owners, on eject-ment by the latter, because they say such true owners have unduly delayed bringing their suit to have the wrong righted of which they complain. The case, therefore, narrows itself down to the single question, whether or not persons out of possession should be denied the right to bring an action of ejectment because an interloper, who is a total stranger to the title, has knowingly and without consideration, and in fraud of their rights, procured a conveyance of that title from one who held it in trust for such persons. The doctrine of laches, and in equity, even the statute of limitations, can have no ap-plication to such a case; but out of abundant caution a suffi-cient showing of diligence is affirmatively made in the bill from which it appears, among other things bearing upon this feature, that to some of the complainants the death of John L. Bartlett did not become known until 1891; that acting under the advice of counsel, deeds were prepared, and suits brought in 1891, which were not finally adjudicated in the Supreme Court of the United States until 1897. Laches could run, if at all, only from the latter year, and this suit was brought in 1898. *Pac. RR. Co.* v. *Mo. Pac. RR. Co.,* 111 U. S. 520; *McIntyre* v. *Prior,* 173 U. S. 54; *McGee* v. *Welch,* 18 App. D. C. 177.

*Mr. Edward C. Peter* and *Mr. Arthur Peter* for the ap-pellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

We are of the opinion that there was no error in dismiss-ing the complainants' bill.

The facts alleged in respect of the legal title acquired by Ann Bartlett to the tract of land which included the lots in controversy, and the discharge of the obligation of the trust deed of November 8, 1828, being taken as true, no good rea-son appears why her heirs have not a sufficiently plain and

adequate remedy at law in an action of ejectment. They allege that the defendants' ancestor, Isherwood, took no interest under the contract between him and John L. Bartlett other than that which the latter had as tenant by the curtesy simply.

This being true, the defendants would not be permitted to set up, as an outstanding title against the heirs of the mortgagor, a mortgage that has been satisfied, although no formal release or reconveyance can be actually produced. *Peltz* v. *Clarke,* 5 Pet. 481, 483. And as regards this proposition there can be no difference in principle between the satisfied mortgage and the satisfied deed of trust, which has practically displaced the mortgage as a security for the payment of money. *Smith* v. *Sullivan,* 20 App. D. C. 553, and cases cited.

Nor is the remedy at law impaired by the fact that no actual, formal release of the deed of trust, or reconveyance of the legal title by the trustee to Ann Bartlett, may be capable of production, because both the satisfaction of the charge and the release or reconveyance may be presumed from the circumstances of the case and the lapse of time, as well at law as in equity. *French* v. *Edwards,* 21 Wall. 147, 149, 150; *Lincoln* v. *French,* 105 U. S. 614, 617.

Facts and circumstances warranting the presumption of satisfaction and release would not necessarily be overcome by the mere fact that forty-one years after the date of the deed of trust a surviving trustee therein, under the circumstances alleged in the bill, undertook to convey the legal title to the ancestor of defendants who was in possession of the premises under the contract between Isherwood and John L. Bartlett.

The presumption of satisfaction and reconveyance on the one hand, or of a conveyance of the absolute title to Isherwood under the contract with John L. Bartlett which expressly contemplated such a conveyance, on the other, could be indulged with equal freedom at law as in equity.

The appellants rely strongly upon *Lincoln* v. *French,* 105

U. S. 614, for the maintenance of the jurisdiction in equity under the facts alleged in their bill.

That case is the same as *French* v. *Edwards*, 21 Wall. 147, and came back to the Supreme Court under change of name after a new trial in the circuit court.

In the first place, the conveyance in trust in that case was essentially different in character from that before us. It was a conveyance to trustees, made January 9, 1863, directing the conveyance. of certain lands upon the construction of a railway if completed within one year thereafter.

There was no re-entry for condition broken, but an action of ejectment was begun by the grantor in the trust deed to recover the land in November, 1866, less than three years after the time provided for the performance of the condition.

In the second place, when the judgment was reversed in *French* v. *Edwards,* because a reconveyance ought to have been presumed in the absence of evidence to the contrary, the court labored under the mistaken impression that the suit had been begun more than eight years after the breach of the condition; and on the final trial, all parties concerned being alive, it was conclusively shown that the trustees had never reconveyed the land to the grantor.

If it were conceded, however, that complainant's remedy is in equity, relief would have to be denied on the ground of laches.

The original purchase by Ann Bartlett and the execution of the trust deed occurred more than seventy years before the commencement of the suit.

The contract between her husband, John L. Bartlett, and Isherwood was made two years later, and Isherwood immediately entered into a possession that has been actual, continuous, notorious, and adverse in him and his heirs and assigns ever since.

Passing by any presumption of title that might be indulged in favor of Isherwood under the facts alleged in the bill, and assuming that his entire right of possession was as grantee of the life estate of John L. Bartlett as tenant by the curtesy, as contended on behalf of the appellants, they

were still wanting in diligence. John L. Bartlett died in May, 1884. The lands had increased enormously in value since the contract with Isherwood, and presumably continued to increase in value between 1884 and 1900. Apparently, every person who had any actual knowledge of the various transactions affecting the title had died before the institution of the suit. The fact that the heirs of Ann Bartlett had become widely scattered is no good ground of excuse for their long delay, and there were no fiduciary relations between them and Isherwood to justify a relaxation of the rule of diligence. Nor is there any pretense of fraudulent concealment from them of the knowledge of their rights. Mere general allegations that the conveyance of the legal title to Haley from the surviving trustee was fraudulently acquired are insufficient. The facts which constitute the fraud or excuse the delay must be specifically stated. *Badger* v. *Badger*, 2 Wall. 87, 95. The case of *McGee* v. *Welsh,* 18 App. D. C. 177, affords no ground for appellant's contention. Whilst there had been great lapse of time, the circumstances were peculiar and the charges of fraud and breach of obligation were direct, specific, and convincing when admitted by the demurrer.

Without considering other grounds of the demurrer, the decree will be affirmed, with costs; and it is so ordered.

*Affirmed.*