## KORSSTROM v. BARNES et al.

### (Circuit Court, W. D. Washington, N. D. September 17, 1907.)

### No. 1,491.

1. WILLS—EFFECT AS PASSING TITLE—DEVISE TO TRUSTEES.

Under what is known in Washington as a "nonintervention" will, by which full powers were conferred on the executors to take possession of and wind up the estate of the testator without any judicial proceedings whatever, except those necessary to establish the will, and which devised and bequeathed all of testator's property absolutely to his executors as trustees, with instructions to sell the same and use the proceeds as therein directed, the legal title to the testator's real estate was vested in such trustees regardless of the validity of the disposition made of the proceeds.

2. LIMITATION OF ACTIONS—ACCRUAL OF CAUSE OF ACTION—ACTION AGAINST GRANTEE OF TESTAMENTARY TRUSTEES.

Where land was devised by a testator to trustees absolutely, and there was no repudiation of the trust nor demand made upon the trustees for the land which the latter sold and conveyed, the statute of limitations does not begin to run against an action by one claiming to be the owner by descent from the testator to recover the same from the grantee until the date of the conveyance to him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 506–510.]

3. TRUSTS—ADVERSE POSSESSION BY TRUSTEE—AVAILABILITY OF DEFENSE—GRANTEE OF TRUSTEES.

Ballinger's Ann. Codes & St. Wash. § 5503, which provides that a party in actual open and notorious possession of real estate under claim and color of title in good faith for seven consecutive years, and who shall have during that period paid all taxes thereon, shall be held to have become the legal owner to the extent and according to the purport of his paper title, will not avail a grantee of real estate from executors and trustees under a will who has had possession and paid taxes for less than seven years as a defense to an action to recover the property by one claiming ownership through descent from the testator; the possession of the executors not being adverse to such claim.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 181.]

**4. ACTION—EQUITABLE DEFENSE IN ACTION AT LAW—LACHES.**

Laches for a period of time less than that necessary to raise the bar of limitation is an equitable defense not cognizable in an action at law in a federal court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 153–155.]

**5. JUDGMENT—CONCLUSIVENESS OF ADJUDICATION—DECREE OF DISMISSAL.**

A decree of dismissal is not a bar to a second suit on the same cause of action, unless it is shown that the cause was decided on the merits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1030–1032.]

At Law. Action to recover real estate. Heard upon a motion to strike out parts of the affirmative defenses pleaded in a separate answer by two of the defendants, and upon a demurrer to each of said defenses. Overruled in part and sustained in part.

W. E. Crews and Bard & Fenton, for plaintiff.

Guie & Guie, for defendant.

HANFORD, District Judge. The answering defendants, Victor Hugo Smith and wife, set up as a first affirmative defense an adverse claim of title to one of the distinct parcels of land claimed by the plaintiff by virtue of a deed given by executors named in the last will and testament of Charles A. White, deceased, and in support of their claim they also allege facts constituting laches on the part of the plaintiff, and that they are bona fide purchasers in good faith. The plaintiff's motion to strike attacks the equitable grounds of defense; that is, the allegations of plaintiff's laches and good faith of the defendants in acquiring the property by purchase from the executors. It is the opinion of the court that the validity of this defense must be affirmed or denied upon strictly legal grounds. The court is required to ascertain and declare the effect of the provisions of the will under which the executors acted in disposing of the property, and in doing so the legal rights of the parties will be determined. If the answering defendants hold the legal title to the property they claim, it is unnecessary for them to aid their legal title by proving facts proper to be considered only in a court of equity, and, if they have not acquired the legal title, their equitable grounds of defense are insufficient to defeat the plaintiff in this action. Therefore the motion to strike, so far as it relates to the matter included in the first affirmative defense, will be granted. The court overrules the demurrer to the first affirmative defense in this answer and sustains said demurrer to the second, third, fourth, and fifth affirmative defenses.

My reasons for so ruling are as follows:

1. This is an action to recover the possession of real estate. The plaintiff in her complaint, without deraigning title, rests her case upon allegations of her absolute ownership, and right of possession, and wrongful ouster by the defendants. The answering defendants, conformably to the Code of this state, requiring defendants in such actions to set forth the nature of their title or claim, have pleaded in this affirmative defense that they are the owners and entitled to possession of a distinct parcel of the land included in the list of property which the plaintiff seeks to recover, that said tract of land was former-

ly owned by one Charles A. White, who died testate in the year 1898, and constituted a part of the estate of said decedent. The answer also pleads the last will and testament of said White, and alleges that it was duly admitted to probate, and established by a decree of the superior court for King county, and letters testamentary thereon were issued to the defendants Barnes and Stein, and that Smith purchased said tract from them in the year 1905, for the price of $17,000, and received from them a deed conveying the title to him, and that he is now the owner of said tract by virtue of said purchase and deed. The demurrer attacks the validity of the will, and the question to be decided is whether the succession to the decedent's title was diverted by the will.

Excepting formal parts, the will reads as follows:

"I, Charles A. White, of the city of Seattle, county of King, state of Washington, being of sound mind and memory, do hereby make, publish and declare this to be my last will and testament, that is to say:

"First. I direct that my body be embalmed and cremated as soon as possible after my death, at the nearest crematory existing at the time to the place of my decease.

"Second. I direct that my funeral expenses, the expenses of my last sickness, and cremation, and all debts owing by me, be paid as soon as possible after my decease and out of the first moneys that shall come to the hands of my Executors, hereinafter named, from any portion of my estate, real or personal.

"Third. All the rest, residue, or remainder of my estate, real, personal and mixed, wherever situated, I give and bequeath to my Executors Frank I. Blodgett and Henry W. Stein, or the survivor of them, in trust nevertheless and upon the following conditions, to-wit:

"That the said trustees, or the survivor of them, as speedily as consistent with the best interest of my estate, shall sell all the property belonging to my said estate, and, after paying the necessary and proper expenses of said trust, pay the proceeds of said sale to the trustees of the Theosophical Society at Adyar, Madras, India, or wherever the said Theosophical Society may be located, appointed or acting under a deed of trust, dated the 14th day of December, A. D. 1892, and duly enrolled.

"And I direct that the receipt of the said trustees, or the reputed trustees for the time being, shall be sufficient discharge for said legacy. It is my express will that the said legacy, to the said Theosophical Society in India be used for the purpose, as far as possible, in obtaining translations into English of the ancient Hieratic Scriptures, believed to exist in India and elsewhere, for the use of the Theosophical Society and its branches all over the world.

"Fourth. It is my will that, upon my death this my will shall be proved as such in the Superior Court of the County of King, State of Washington, and order of Probate thereof obtained, and that no further proceedings be had or taken in the matter of this my will nor in matter of my estate by said Superior Court, tribunal or officer whatever; and it is my will that, upon my death my said Executors forthwith enter into possession of my estates, and the whole thereof, and that absolute title rest in my said Executors, hereinafter named; in trust, however, as hereinbefore provided, without any other or further proceedings in or on the part of said Superior Court, Board, Tribunal or Officer whatsoever; and shall be managed by them without accountability therefor, or supervision thereof, or control thereof of any other Court, Board, Tribunal or Officer whatsoever.

"Fifth. I further direct that my said executors pay no claim or claims that may be made by my former wife Elin M. C. White, or whatever her name may be, except in accordance with my statement of accounts, hereto attached, unless otherwise ordered in a court of justice, having competent jurisdiction.

"Sixth. I hereby nominate and appoint as the Executors of this my will

and testament, Frank I. Blodgett and Henry W. Stein, both of Seattle, Washington, and direct that they be not required to give bond.

"Seventh. I hereby revoke all former wills made by me."

By a codicil Thomas A. Barnes was substituted in the place of Frank I. Blodgett as an executor.

The theory upon which the demurrer attacks the sufficiency of the first affirmative defense is that the devise or bequest to the Theosophical Society is void for uncertainty as to the identity of the beneficiary intended, and as to the use to be made of the testator's gift, and the power of sale given to the executors, being merely incidental, is also void, so that the title to all the real estate of which the testator was seised and possessed at the time of his death descended directly to his heirs. The will confers general powers upon the executors to settle and wind up the business affairs of the testator, in the best manner according to their own discretion, without any judicial proceedings whatever except the proceedings necessary to establish the will. It is what is known in this state as a "nonintervention will," and, furthermore, it is a testamentary conveyance of the legal title to the executors as trustees. The intention of the testator is expressed in positive and clear words, leaving no room for doubts or differences of opinion to be removed by construction. The third paragraph, by apt words in common use, disposes of the entire estate by devising and bequeathing it in trust to two designated persons, and the manifest intention of the testator is emphasized by a clause in the fourth paragraph which reads as follows:

"And it is my will that upon my death my said executors forthwith enter into possession of my estates, and the whole thereof, and that absolute title rest in my said executors, hereinafter named; in trust however as hereinbefore provided."

Although the devisees are designated as "executors," a trust is created by the will, and the persons named are the trustees. Smith v. Smith, 15 Wash. 239, 46 Pac. 249. I hold that by the will the legal title to all of the decedent's lands was conveyed to and became vested in the trustees, and that it did not descend to his heirs, and it is a necessary conclusion from the premises that the plaintiff has no title upon which to maintain an action of ejectment. Lincoln v. French, 105 U. S. 614, 26 L. Ed. 1189; 22 Encyc. of Pl. & Pr. p. 155. If the will fails to make a final disposition of the estate by a donation of the residue to a discoverable donee for an ascertainable use, its validity as a conveyance of the title to real estate is not impaired; but in that case the heirs can claim that there is a resulting trust in their favor, and hold the trustees accountable, in equity, as trustees for their use, to the extent only, of the residue of the estate remaining after payment of the testator's debts, and expenditures for taxes and costs of administration of the trust, or by a suit in equity, against vendees, if the facts warrant, they may establish equitable rights and obtain a decree which will convey the title and give them the property. Whatever controversy the plaintiff may have with respect to the legacy to the Theosophical Society will require for its determination exercise of the powers of a court of chancery.

2. The second defense is based upon the statute of limitations of this state. The statute, however, allows a period of 10 years within which to commence an action for the recovery of real property, and it appears that the action was commenced within 10 years from the date of the deed conveying the property in question to the answering defendants, which is the time when the statute commenced to run. This is so for the reason that no demand having been made upon the trustees for possession of the property, and as no repudiation of the trust is alleged, they held the property as trustees only, by virtue of the title vested in them by the provisions of the will. That is to say, their possession was not adverse to the equitable owner. The statute of limitations is not a bar to the plaintiff's claim for damages, for the reason that the answering defendants are not liable for use and occupation or rents and profits for any time antedating their actual possession under their deed.

3. The third defense is based upon a statute by the terms of which a party in actual, open, and notorious possession of real estate under claim and color of title in good faith for seven consecutive years, and who shall have, during that period, paid all taxes legally assessed, shall be held to have become the legal owner to the extent and according to the purport of his or her paper title. Ballinger's Ann. Codes & St. § 5503; Pierce's Code (Ed. of 1905) § 1160. These answering defendants do not claim to have paid taxes for seven years, nor to have had possession during that period, and it is not alleged that the trustees expended their own money in payment of taxes, and if they had done so, by the terms of the statute, their estate as trustees would not have been converted into a title in their own right. Having no paper title other than the will, that document would be still their muniment of title, and it would express the limitations thereof.

4. The fourth defense is an attempt to plead an estoppel in bar of the action. If this defense has any merit at all, it is a purely equitable ground of defense not cognizable in a federal court. It is true that there are exceptions to the rule excluding equitable defenses in actions at law in the federal courts, as when the holder of the legal title to property prosecutes an action at law to recover possession thereof from a party having a superior right of possession for the time being (City of Cincinnati v. White's Lessee, 6 Pet. [U. S.] 441, 8 L. Ed. 452), but an estoppel arising from mere laches for a period of time, less than the time necessary to raise the bar of the statute of limitations does not come within any known exception.

5. The fifth defense sets forth that, previous to the commencement of this action, the plaintiff commenced a suit in the superior court to obtain a decree annulling the will of Charles A. White, and all the transactions of the executors in disposing of his estate, and to establish her rights as his sole heir, which suit has been since the commencement of this action by a decree of the superior court dismissed with prejudice to another action by the plaintiff. This is insufficient as a plea in bar, for the reason that it is not alleged that the cause was heard and decided upon its merits, nor that the plaintiff voluntarily entered a retraxit. Woodward v. Davidson (C. C.) 150 Fed. 840.